UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re: Application of

JOINT STOCK COMPANY
RAIFFEINSENBANK,

               Petitioner.

Case No. 16-mc-80203-MEJ

**ORDER RE: 28 U.S.C. § 1782 APPLICATION**

Re: Dkt. No. 1

## INTRODUCTION

Before the Court is Petitioner Joint Stock Company Raiffeinsenbank's ("Petitioner" or "RFB") ex parte Application pursuant to 28 U.S.C. § 1782 for an order authorizing it to obtain discovery from Respondent Ilya Zubarev, who resides in this district. Appl., Dkt. No. 1; Br. in Support of Appl. ("Br."), Dkt. No. 1-1. Having considered the parties' papers, the record in this matter, and the relevant legal authority, the Court now issues the following Order.

## BACKGROUND

RFB, one of the largest banks in Russia, is registered under the laws of the Russian Federation with its registered address in Moscow. Br. at 1. On July 22, 2014, RFB entered into a Loan Facility Agreement (the "Loan Agreement") with TV-Alliance LLC ("TV-Alliance"), the main operational company of the Rolsen Group, which is a conglomerate of companies that produces household appliances in Russia. Br. at 1-2; Uryumov Decl. ¶ 8, Dkt. No. 6-1.[1] Through

---

[1] RFB initially filed several declarations both in English and Russian, however the declarants did not sign the English versions, and there was no attestation from a translator that the English versions were true and correct translations of the Russian versions. See Kotuby Decl., Exs. B-D, Dkt. No. 2. The Court ordered RFB to file a supplemental response concerning this potential discrepancy (Dkt. No. 5), and RFB timely filed a supplemental response with a certification from

the Loan Agreement, RFB restructured its existing credit to the Rolsen Group and opened a credit line to TV-Alliance in the amount of "up to USD 19,850,000." Br. at 2-3; Uryumov Decl. ¶ 8. RFB and other companies for the Rolsen Group also signed several other agreements as security for the loan. Br. at 3; Uryumov Decl. ¶¶ 8, 10. The Loan Agreement required payment by July 30, 2015, but TV-Alliance and several of the collateral providers for the other agreements defaulted on their obligations. Br. at 3; Uryumov Decl. ¶¶ 9-10.

RFB initiated insolvency and debt collection proceedings against TV-Alliance and the collateral providers in Russia. Br. at 4; Uryumov Decl. ¶ 11; *see also id.* ¶¶ 12-25. At present, there are eight separate matters pending in Russian courts related to the loan made by RFB (collectively, the "Russian Proceedings").[2] Br. at 4-5; Uryumov Decl. ¶¶ 12-25, 33-39 (discussing the various proceedings and their statuses; RFB initiated only six of these matters).

Zubarev is a co-founder and shareholder of the Rolsen Group. Br. at 5. RFB does not know Zubarev's exact ownership interest as it asserts the Rolsen Group "has an extremely complex and nontransparent corporate structure, with frequent use of intermediate holding companies and nominee shareholders and commingled finances." Br. at 5. "However, as part of its initial application for the loan instruments, the Rolsen Group represented to RFB that Mr. Zubarev was a 25% shareholder in the group." *Id.* Zubarev also owns indirect shares in one of the collateral provider companies and another member entity of the Rolsen Group. *Id.* RFB provides additional evidence that Zubarev is "actively involved" in the Rolsen Group's activities and has represented it in dealings with RFB on multiple occasions, including attending meetings with the Chairman of RFB's Management Board in June 2014 and June 2015. *Id.* at 5-6; Uryumov Decl. ¶ 42. At the June 2015 meeting to discuss potential restructuring of the Loan Agreement, Zubarev provided detailed descriptions of the Rolsen Group's plans, including how payments would be

---

Elizabeth Suscenko, a certified translator, that the "English translations [of the declarations] are true and accurate translations from Russian into English." *See* Suppl. Resp. & Exs., Dkt. No. 6.

[2] RFB refers to the various judicial entities overseeing the Russian Proceedings as "Russian Courts" or the "Arbitrazh Courts." *See generally* Br. RFB does not provide much detail about these "Courts" but for purposes of this Order, the Court refers to them as the "Arbitrazh Courts."

made to creditors. Br. at 6; Kolesnikova Decl. ¶ 14, Dkt. No. 6-3. Then in April 2016, as part of negotiations to restructure the debt, the Rolsen Group management offered personal guarantees from Zubarev as collateral for a proposed restructured loan. Br. at 6; Uryumov Decl. ¶¶ 28-29. Zubarev is currently employed as a Senior Partner with Runa Capital, a company headquartered in San Francisco, California. Br. at 1, 11. He is also employed as a Board Member of Acronis, Inc.; Acronis is located at the same address in San Francisco as Runa Capital. *Id*. Zubarev also is a Founding Partner and Board Member of Quantum Wave Fund, which is located in Palo Alto, California. *Id.*. He is not a party or participant in the Russian Proceedings. *Id.* at 12.

Now, in concurrence with the Russian Proceedings, RFB seeks discovery from Zubarev about "the corporate structure of the Rolsen Group, its assets, intragroup and external transfers of funds, and the circumstances around the default." Br. at 6-7. It contends that "[a]s a 25% beneficial owner of the Rolsen Group who is still involved in the everyday affairs, including in relation to RFB's loan to TV-Alliance, and was directly involved in negotiating the initial loan and post-default restructuring proposals, Zubarev should have relevant and necessary information regarding the group's structure, the allocation of funds, and the circumstances surrounding the default." *Id.* at 7. RFB further asserts that the evidence it seeks can be submitted in the Russian Proceedings. *Id.* It explains creditors can submit documents in insolvency proceedings to support a claim for parent company liability, as well as documents to support third-party liability. *Id.* It also notes the "Arbitrazh Procedure Code" does not prohibit use of evidence obtained through discovery or by means of foreign court proceedings. *Id.*

RFB submits two proposed subpoenas. Kotuby Decl., Ex. A ("Subpoenas"), Dkt. No. 2. One is for Zubarev's deposition in San Francisco, California, which covers four areas of inquiry: (1) Zubarev's role in the Rolsen Group, its ownership and corporate structure, corporate governance, accounting practices, and intragroup transfer practices; (2) Zubarev's participation in and the circumstances surrounding the Loan Agreement, collateral agreements, their default, and negotiations with RFB related to potential restructuring; (3) Payments from TV-Alliance or the collateral providers to Zubarev; and (4) Zubarev's access and ability to obtain requested documents. RFB requests Zubarev produce 12 categories of documents. *See* Subpoenas (both

3

deposition subpoena and document production subpoena request same categories of information). Request 1 seeks communications between the Rolsen Group and RFB relating to the negotiation, initiation, execution, and potential restructuring of the Loan Agreement and Collateral Agreements. Request Nos. 2-4 seek documents evidencing ownership structure, corporate governance, and accounting practices of the Rolsen Group. Request Nos. 5-7 seek the Rolsen Group's financial statements, tax returns, and bank records. Request Nos. 8-10 seek documents concerning the Rolsen Group's assets, intercompany transactions, and accounting entries with its Beneficial Owners, and all payments from TV-Alliance or the collateral providers to the Beneficial Owners. Request Nos. 11-12 seek all documents related to meetings held between Zubarev and RFB, and meetings where the Loan Agreement or Collateral Agreements were discussed among Beneficial Owners.

There is no indication RFB has served Zubarev or any Rolsen Group entity with copies of this Application or RFB's proposed discovery requests.

## LEGAL STANDARDS

**A.    Discovery Pursuant to 28 U.S.C. §1782**

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782(a) provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Consequently, the statute establishes a three-part test when deciding whether to grant a § 1782 application: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an interested person." *In re Ex Parte Apple Inc. (In re Ex Apple)*, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citation and internal quotation marks omitted). When the three statutory requirements have been met, "a

district court is free to grant discovery in its discretion" so long as compelling production of the information would not violate a legally applicable privilege. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (quotation omitted); 28 U.S.C. § 1782 ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.").

However, "[a] district court is not required to grant the application" and "instead retains discretion to determine what discovery, if any, should be permitted." *Cryolife, Inc. v. Tenaxis Med., Inc.*, 2009 WL 88348, at *1 (N.D. Cal. Jan. 13, 2009) (citing *Intel*, 542 U.S. at 264). The United States Supreme Court prescribed four factors (known as the "*Intel* factors") for district courts to consider in exercising their discretion:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome."

*In re Ex Apple*, 2012 WL 1570043, at *1 (quoting *Intel*, 542 U.S. at 264-65). District courts must exercise their discretion with the "twin aims" of § 1782 in mind: (1) "providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (quotation omitted).

**B.    Ex Parte Filing of Application**

Generally, *ex parte* requests are disfavored and mostly limited to emergency situations because such requests disrupt and undermine the adversarial system on which the Court generally operates. *In re Jud. Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd. (Macquarie Bank I)*, 2014 WL 7706908 at *1 (D. Nev. June 4, 2014); *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192-93 (C.D. Cal. 1989). Nonetheless, § 1782 petitions are regularly reviewed on an *ex parte* basis. *See Macquarie Bank I*, 2014 WL 7706908 at *1; *In re Republic of Ecuador*, 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010). Consequently, orders granting § 1782 applications typically only provide that discovery is "authorized"; thus the opposing party may

still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*. *See Macquarie Bank I*, 2014 WL 7706908 at *1 (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)); *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." (footnote and internal quotation marks omitted)).

## DISCUSSION

### A. Threshold Requirements of 28 U.S.C. § 1782

There is no dispute that RFB successfully meets the statutory requirements of 28 U.S.C. § 1782's three-part test. First, "the discovery sought is from a person residing in the district court to which the application is made," because RFB seeks discovery from Zubarev who is employed in San Francisco and Palo Alto, and thus can be found within this Court's jurisdiction. Second, "the discovery is for use in a proceeding before a foreign tribunal" because RFB seeks to use the discovery gained from Zubarev in the Russian Proceedings before the Arbitrazh Courts in Russia. Third, RFB is an "interested person" because it is a party in the foreign proceedings. Accordingly, this Court has the authority to compel discovery under § 1782.

### B. *Intel* Discretionary Factors

Even after finding RFB has met § 1782's three-part test, the Court still retains discretion to decide what discovery, if any, should be permitted. The four *Intel* factors assist the Court in this determination. Although the Court individually analyzes each discretionary factor, they "are not stand-alone categorical imperatives" but rather "involve overlapping considerations, [which] are considered collectively by the court." *In Matter of Appl. of Action & Protection Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. 2014) (quotation omitted).

#### 1. Participant in the Foreign Proceeding

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If the person "is a participant in the foreign

proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* There is generally no need for § 1782(a) aid where a party seeks evidence from a participant in a foreign proceeding because a foreign tribunal has jurisdiction over those appearing before it and can order them to produce such evidence. *Id.* However, nonparticipants may be outside the foreign tribunal's jurisdictional reach and thus their evidence may be unobtainable absent § 1782 aid. *Id.*

"Although the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceedings." *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd. (Macquarie Bank II)*, 2015 WL 3439103, at *6 (citations omitted); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal"); *see In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (first *Intel* factor weighed against granting § 1782 application even though the subpoena was directed to a nonparticipant in the foreign proceeding because the evidence sought could be obtained from a participant in the foreign proceeding); *see also In re Ex Parte Appl. of Qualcomm Inc.(Qualcomm)*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (first *Intel* factor neutral because unclear whether the foreign tribunal could order discovery sought).

The Court ultimately finds this factor generally weighs in RFB's favor. According to RFB, Zubarev is not a participant in the Russian Proceedings, and there is no opportunity for third party discovery in the Arbitrazh Courts. Br. at 12; Ugryumov Decl. ¶ 45. There is no reason for the Court to doubt these representations at this point. The Court, however, notes that while Zubarev himself may not be a participant in the Russian Proceedings, he owns indirect shares in Videofon, one of the collateral provider companies that RFB indicates is somehow involved in one of the Russian Proceedings. *See* Ugryumov Decl. ¶¶ 15-16, 40; Br. at 4, 5. In certain instances, Zubarev and Videofon's relationship might suggest § 1782 discovery is inappropriate, as other courts have warned "against allowing § 1782 discovery when the Petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity." *Macquarie Bank II*, 2015 WL 3439103, at *6 (citing

*Schmitz*, 376 F.3d at 85 ("Although technically the respondent in the district was [the foreign counter-party's law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation.")). But in this case it is unclear whether Videofon is in fact *a participant* in the Russian Proceedings. RFB does not explain Videofon's precise role in the Russian Proceedings and uses inconsistent language when describing Videofon's involvement. In some instances RFB refers to its bankruptcy petition "*with respect* to Videofon" and in others "*against* Videofon" *See* Br. at 4; Ugryumov Decl. ¶ 15 (emphasis added to both). Without more information about the case in which Videofon is involved and the nature of that proceeding, it is uncertain whether the information RFB seeks falls beyond the reach of the Arbitrazh Courts. *See In re Appl. of Imanagement Servs. Ltd.*, 2006 WL 547949, at *2 (D.N.J. Mar. 3, 2006) ("[C]ourts are not to speculate about foreign law to rule on requests under § 1782."). Consequently, this factor does not clearly weigh in favor or against § 1782 discovery.

### 2. Receptivity of the Foreign Tribunal

Under the second *Intel* factor, courts consider the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. *Intel Corp.*, 542 U.S. at 264. This factor focuses on whether the foreign tribunal "is willing to consider the information sought." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013).

A foreign nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")). Rather, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *Id.* (emphasis in original) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures, [] provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at

1100 (footnotes omitted); *see also Schmitz*, 376 F.3d at 84 (denying discovery because "the German government was obviously unreceptive to the judicial assistance of an American federal court" since it requested the court to deny petitioner's § 1782 application); *see Qualcomm*, 162 F. Supp. 3d at 1040 (finding second *Intel* factor weighed in favor of respondents because the Korean Fair Trade Commission's amicus brief asked the court to deny petitioner's applications and that it had no need or use for the requested discovery). "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'" *Euromepa*, 51 F.3d at 1100 (citation omitted).

The Court finds this factor generally weighs in favor of RFB's Application. RFB asserts that the Arbitrazh Procedure Code does not prohibit use of evidence obtained in the course of discovery or disclosure by means of foreign court proceedings, and the Arbitrazh Courts have not taken any action to preclude RFB from seeking documents or testimony from third parties outside their jurisdiction. Br. at 7, 14; Ugryumov Decl. ¶ 44. The Court is unaware of any authoritative source suggesting the Arbitrazh Courts would be unreceptive to the discovery RFB seeks. *See In re Kolomoisky*, 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006) (finding no evidence that the Russian government or the court where the Moscow Action occurred opposes Petitioner's discovery request). Moreover, receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties facilitating such cooperation. *See* Br. at 13 (citing *Imanagement*, 2006 WL 547949 at *4, which found that the existence of a cooperative treaty between the United States and Russia—the Hague Evidence Convention—supports a finding the Russian court may be receptive to American judicial assistance); *see also In re The Appl. of Kate O'Keeffe for Assistance Before a Foreign Tribunal*, 2015 WL 5039723, at *2 (D.N.J. Aug. 26, 2015) ("[T]he Hague Evidence Convention is in effect between the United States and Hong Kong, which indicates that Hong Kong's courts are receptive to American judicial assistance."). Given the lack of authoritative evidence that the Arbitrazh Courts would be unreceptive to discovery from the United States, combined with the presence of case law that Russia may actually be receptive to such discovery, the Court finds this factor weighs in favor of § 1782 discovery. *See*

*Kreke*, 2013 WL 5966916 at *5 ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery." (citations and internal quotation marks omitted)).

### 3. Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor asks whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 432 U.S. at 264-265. Although courts need not determine if an applicant has exhausted its discovery attempts abroad, "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Appl. of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012); *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (finding applicant's failure to obtain any discovery in the foreign tribunal indicated to the court an attempt to circumvent those rules).

This Court does not have any reason to believe that RFB's § 1782 request is an attempt to circumvent the policies or proof-gathering restrictions of the Arbitrazh Courts, and thus finds this factor weights in favor of discovery. According to RFB, the Arbitrazh Courts have not taken any action to preclude it from seeking evidence outside their jurisdiction. Br. at 14; Ugryumov Decl. ¶ 44. Although RFB has not indicated whether it requested discovery in the Russian Proceedings, it has represented that there are no general discovery procedures in the Arbitrazh Courts apart from specific document requests. *See* Ugryumov Decl. ¶ 45 (attesting that in the Arbitrazh Courts, parties are only required to provide documents necessary to support their case, with no obligation to disclose documents that are harmful to their case or supportive of the opposite party's case; a party may obtain a specific document held by an opposite or third party if it petitions the court, however, the petition must describe the evidence sought and its location). While it is unclear whether RFB has requested specific documents in the Russian Proceedings, it represents that it could not obtain the discovery it now seeks due to the absence of general discovery procedures in

those courts. Seeking more discovery than Russian discovery procedures allow does not circumvent Russian law. *See Heraeus Kulzer, GmbH v. Biomet, Inc. (Heraeus)*, 633 F.3d 591, 597 (7th Cir. 2011) (seeking more discovery than German discovery procedures allow was not found to be an attempt to circumvent German law because a German litigant "cannot obtain even remotely comparable discovery by utilizing German procedures[.]"); *Kreke*, 2013 WL 5966916 at *6 ("[T]he fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." (citations omitted)). Consequently, the Court finds this factor weighs in favor of RFB's request.

### 4. Undue Intrusion or Burden

The final discretionary factor asks whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure. *See, e.g.*, *Gov't of Ghana v. ProEnergy Servs. LLC*, 677 F.3d 340, 343 (8th Cir. 2012); *see also In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994) (unless the court order otherwise specifies, the Federal Rules of Civil Procedure apply). Requests must be "proportional" "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Supreme Court has recognized that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

RFB argues its discovery requests for information on the corporate structure of the Rolsen Group, its assets, intragroup and external transfers of funds, and the circumstances surrounding the default are "highly relevant to pending proceedings in Russia." Br. at 6-7, 10. It explains it initiated proceedings "with the intent to obtain payment from TV-Alliance and the collateral providers, who are all part of the Rolsen Group," and the discovery it seeks is relevant to the proceedings because it will allow it "to locate the assets that it is entitled to recover." *Id.* at 10.

11

RFB's requests are similar to requests courts have found relevant in comparable foreign bankruptcy proceedings. *See In re Appl. of Hill*, 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005) (finding requests for "debtors' accounting practices, cash flow, corporate governance, management integrity and the genuineness of certain transactions" relevant to foreign liquidation proceeding because it allowed requesting party to reconstruct financial transactions and recover assets belonging to the debtor companies). Therefore, the Court agrees that RFB's discovery requests generally appear relevant to the Russian Proceedings.

However, RFB's discovery requests must be somewhat tailored. RFB contends its requests are "narrowly and appropriately tailored to minimize any undue intrusion or burden and [are] proportional to the needs of the case." Br. at 14. But RFB has not narrowed its requests temporally. *See Qualcomm*, 162 F. Supp. 3d at 1045 (finding requests for production and deposition were not narrowly tailored because they required respondents "to search through troves of material spanning over a decade."). RFB seeks all documents evidencing ownership structure, corporate governance, accounting practices, financial statements, tax returns, bank records, assets, and intercompany transactions of the Rolsen Group, and all payments from TV-Alliance or the collateral providers to the Beneficial Owners without any time limitation, such as for the years in which RFB did business with Rolsen Group entities. *See* Subpoenas. Perhaps RFB has a legitimate reason for not confining its requests to a specific time period, but it has presented no such arguments to the Court. Consequently, in the interests of proportionality, RFB's discovery requests should be tailored to documents from the time that RFB started working with TV-Alliance and the collateral providers until present day.

Finally, although the discovery RFB seeks may contain sensitive information, the Court cannot conclude at this time RFB's requests are unduly intrusive. If Zubarev seeks to challenge the intrusiveness, relevance, breadth, or burdensomeness of RFB's request for documents, the Court's ruling does not preclude him from bringing a motion to quash or modify the subpoenas. Additionally, the Court is willing to consider proposed protective orders to prevent the misuse of such information. In sum, the Court finds this fourth *Intel* factor weighs in favor of granting RFB's application so long as RFB limits the request to the time frame described herein.

**CONCLUSION**

In light of the foregoing analysis, the Court finds RFB meets § 1782's statutory requirements and concludes that the *Intel* factors collectively weigh in favor of granting RFB's Application. Accordingly, the Court exercises its discretion and **GRANTS** RFB's § 1782 Application, as limited above. RFB may serve the modified Subpoenas along with a copy of this Order. This Order is without prejudice to any motion to quash that Zubarev or any other appropriate party may file.

**IT IS SO ORDERED.**

Dated: November 2, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge